[Cite as *Kollar v. Ohio High School Athletic Assn.*, 2026-Ohio-2954.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

ROSS KOLLAR ET AL.,

Plaintiffs-Appellees,

v.

OHIO HIGH SCHOOL ATHLETIC ASSOCIATION,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 MA 0116

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2025 CV 02716

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Dismissed.

---

*Atty. Frank L. Cassese*, Betras Kopp, LLC, for Plaintiffs-Appellees and

*Atty. Joseph A. Fraley* and *Atty. Joshua M. Fraley,* Pencheff & Fraley Co., LPA, for Defendant-Appellant.

Dated: July 30, 2026

**DICKEY, J.**

{¶1}   Appellant, Ohio High School Athletic Association ("OHSAA") appeals the December 1, 2025 judgment entry of the Mahoning County Court of Common Pleas adopting a magistrate's decision granting the permanent injunction requested by Appellees, Ross Kollar ("Father") and Kate Kollar ("Mother") (collectively "Parents"), as natural guardians and next-of-kin to L.K., a minor, in this appeal of an OHSAA student-athlete eligibility determination.   In an October 6, 2025 ruling, the OHSAA rejected the request of Cardinal Mooney High School to apply the adult criminal behavior exception to the OHSAA bylaw that rendered L.K. ineligible to play football and baseball at Cardinal Mooney during the 2025-2026 school year, after he withdrew from Ursuline High School and transferred to Cardinal Mooney at the beginning of his twelfth-grade year.   Parents appealed the October 6, 2025 decision to an OHSAA Appeals Panel. Following a hearing, which was expedited at Parents' request, the Appeals Panel affirmed the OHSAA's denial of the request for exception on October 8, 2025.

{¶2}   In their three-count verified complaint, Parents argue the OHSAA decision was unreasonable, arbitrary, and capricious (count one), they assert the OHSAA bylaws and procedure violated L.K.'s rights to equal protection and due process (count two), and they request injunctive and equitable relief (count three).   The judgment entry on appeal declares the OHSAA's October 6, 2025 ruling was arbitrary based on violations of due process and renders the OHSAA decision "null and void."   The judgement entry prohibits the OHSAA "from taking or enforcing any action or order based upon its October 6, 2025 ruling or any subsequent ruling by its Executive Director declaring L.K. ineligible or in any way, interfering with, restraining, preventing or precluding L.K. from participating in interscholastic athletics during the 2025-2026 school year at any OHSAA member school."   (12/1/25 J.E., p. 7).

{¶3}   L.K. graduated from Cardinal Mooney on May 24, 2026. Cardinal Mooney's 2025-2026 baseball season ended on June 13, 2026, when the team was defeated in the semi-final round of the OHSAA Division IV championship by Sandusky Perkins.   The following day, Sandusky Perkins prevailed over Franklin Bishop Fenwick to become the 2025-2026 Division IV state champions.   As we find no live controversy is presented here

Case No. 25 MA 0116

and the issue presented in this appeal is not capable of repetition but evading review, this appeal is moot.

**{¶4}** " 'The doctrine of mootness is rooted in the "case" or "controversy" language of Section 2, Article III of the United States Constitution and in the general notion of judicial restraint.' " *Pernick v. Dallas*, 2021-Ohio-4635, ¶ 51 (7th Dist.), quoting *Croce v. Ohio State Univ., Bd. of Trustees*, 2021-Ohio-2242, ¶ 16 (10th Dist.). It is well-established law in Ohio that a court does not have jurisdiction over a moot question. *Pernick* at ¶ 51. An action is deemed moot when "they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." (Internal quotations omitted). *Pernick* at ¶ 51, citing *Doran v. Heartland Bank*, 2018-Ohio-1811, ¶ 12 (10th Dist.). " 'It is not the duty of a court to decide purely academic or abstract questions.' " *Pernick* at ¶ 51, quoting *James A. Keller, Inc. v. Flaherty*, 74 Ohio App.3d 788, 791 (1991).

**{¶5}** Because a student-athlete's eligibility to compete in high school sports is necessarily tied to enrollment and active participation, Ohio intermediate appellate courts have uniformly held graduation extinguishes any live dispute between the student-athlete and the OHSAA. *See Lewis v. Ohio High School Athletic Assn.*, 2015-Ohio-3459, ¶ 31 (5th Dist.)*; Paige v. Ohio High School Athletic Assn.,* 2013-Ohio-4713, ¶ 9 (1st Dist.); *Dankoff v. Ohio High School Athletic Assn.,* 2008-Ohio-4559, ¶ 4 (9th Dist.); *Ulliman v. Ohio High School Athletic Assn.,* 2009-Ohio-3756, ¶ 28 (2d Dist.).

**{¶6}** Relevant to this appeal, the First District in *Paige* opined:

[I]t is undisputed that Paige has graduated from Winton Woods High School and will play no more high school basketball games. Thus, the power of the OHSAA to adversely affect her rights to play interscholastic athletics has ended. Consequently, there is no live controversy regarding the transfer rule or her participation in athletics at Winton Woods. As a result, we agree with Paige that the portion of the trial court's injunction which permitted her to participate in interscholastic athletics at Winton Woods is moot.

*Paige* at ¶ 9. The Ninth District in *Dankoff* similarly reasoned "the trial court's order accomplished a single purpose: it enjoined OHSAA and Archbishop Hoban from preventing [Dankoff] from participating on the bowling team during his senior year. [Dankoff] has now graduated, and there is no live controversy surrounding his participation in high school athletics." *Dankoff* at ¶ 4.

**{¶7}** The Ohio Supreme Court has recognized three exceptions to the mootness doctrine. First, the doctrine does not apply when issues are "capable of repetition, yet evading review." *State ex rel. Beacon Journal Publishing Co. v. Donaldson*, 63 Ohio St.3d 173, 175 (1992). "[T]his exception applies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231 (2000); *State ex rel. White v. Kilbane Koch*, 2002-Ohio-4848, ¶ 13. There exist two additional exceptions to the mootness doctrine: (1) when the issue involves "a matter of great public interest," or (2) when "there remains a debatable constitutional question to resolve." *Franchise Developers, Inc. v. Cincinnati*, 30 Ohio St.3d 28 (1987), paragraph one of the syllabus.

**{¶8}** Ohio intermediate appellate courts that have considered the mootness doctrine as it applies here have declined to consider OHSAA individual eligibility disputes pursuant to the "capable of repetition, but evading review" exception to the mootness doctrine. The Ninth District reasoned, "[Dankoff] has graduated, and the possibility of further litigation between the parties is foreclosed." *Dankoff* at ¶ 4. The First District in *Paige* similarly opined, "because Paige has graduated, there is no reason to suspect that either she or her parent, the parties actually involved in this case, will again be subjected to the actions of the OHSAA." *Paige* at ¶ 17. The First District in *Paige* further found the OHSAA appeal raised neither a debatable constitutional question or a matter of great public importance sufficient to warrant exercise of jurisdiction over a moot case.

**{¶9}** A single exception to the mootness doctrine as it applies to OHSAA individual eligibility disputes has been recognized in Ohio, that is, where the injunction at issue not only restrains the OHSAA from limiting student participation but also protects the member school from OHSAA sanctions. In *Ulliman,* 2009-Ohio-3756 (2d Dist.), the

trial court's injunction barred the OHSAA from taking action against both the student and the high school for allowing the student to participate. The Second District distinguished the foregoing facts from the facts in *Dankoff*, where the injunction only restrained OHSAA from prohibiting the student's participation with no express protection for the school. The *Ulliman* court found that a live controversy existed because the OHSAA's bylaws provided for forfeitures of athletic contests where ineligible players participated, as well as other sanctions including forfeiture of championship status, fines, and return of financial receipts. Because these sanctions could still be imposed on the school, the Second District opined the controversy was not extinguished by Ulliman's season-ending injury.

{¶10} This distinction was further examined in *Paige*, 2013-Ohio-4713 (1st Dist.)*,* where the OHSAA argued a live controversy remained because it could impose future sanctions against the school. The First District rejected the argument because the school had never been made a party to the case, had never moved to intervene, and had asserted no interest in the matter. Thus, the First District reasoned "any actions the OHSAA may take against Winton Woods in the future are irrelevant in determining whether a live controversy currently exists between Paige and the OHSAA." *Paige* at ¶ 12. Significantly, the First District in *Paige* did not dispute the *Ulliman* framework – it simply did not apply *Ulliman* because the school was not a party.

{¶11} Cardinal Mooney was named in the verified complaint as a "nominal defendant," and was represented by counsel during the lower court proceedings. Although counsel for Cardinal Mooney did not elicit testimony from the witnesses at the hearing, he did advance a two-paragraph closing argument, where he acknowledged the school's OHSAA membership and conceded the school was "bound by the bylaws and the processes of the [OHSAA]." Finally, counsel acknowledged Cardinal Mooney "respect[s] those bylaws and processes, and . . . [would] comply with them to the best of [its] ability, and . . . also obey the orders of [the trial court.]" (10/31/25 Hrg. Tr., p. 211).

{¶12} Bylaw 11-1-4 reads in its entirety:

> If a lawsuit is commenced against the OHSAA seeking to enjoin the OHSAA from enforcing any or all of its Constitution, bylaws, sports regulations, decisions of the OHSAA, and an Order from a Court of proper jurisdiction is subsequently either voluntarily vacated, or stayed, or reversed

or otherwise determined by the Courts that the equitable relief sought is not or was not justified, the Executive Director may impose any one or more of the following in the interest of restitution and fairness to other member school's athletes:

(a) Require that individual or team records and performances achieved during such participation be vacated or stricken.

(b) Require that team victories be forfeited to opponent.

(c) Require that team or individual awards earned during such participation be returned to the Association.

(d) Require the return of any financial receipts realized from tournament participation.

(e) Impose a monetary penalty commensurate with the expense to the OHSAA for the litigation.

(f) Require that the ruling be imposed the immediately following school year/sports season.

{¶13} The judgment entry at issue in this appeal does not prohibit the OHSAA from imposing the sanctions listed in Bylaw 11-1-4, so it more closely resembles the judgment entry in *Dankoff* than *Ulliman*. Accordingly, we find no live controversy exists following L.K.'s graduation and the conclusion of the OHSAA Division IV championship because the judgment entry places no prohibition on the OHSAA regarding the imposition of Bylaw 11-1-4 sanctions.

{¶14} Accordingly, we adopt the sound reasoning of the First, Second, and Ninth Districts and find no live controversy remains following L.K.'s graduation from Cardinal Mooney and the conclusion of the 2025-2026 OHSAA Cardinal Mooney baseball season. For the same reasons, we find the issue is not capable of repetition but evading review. Therefore, this appeal is dismissed as moot.

Case No. 25 MA 0116

{¶15} We do not consider the merits of this appeal as detailed legal analysis is required that would ultimately have no precedential value. In order to reach the merits, we would be required to resolve several significant questions of first impression in Ohio through dicta in this opinion. With respect to the de novo hearing conducted by the trial court, the OHSAA argues a reviewing court is limited to the evidence in the OHSAA record and may not accept additional evidence on the merits. As a consequence of the extraordinary deference afforded to the internal operations of a voluntary association, the OHSAA argues the trial court may not rewrite or override the plain language of a bylaw that is duly-enacted by members of a voluntary association. This argument is of particular relevance here, as Appellees conceded they could not satisfy the documentation requirements of the requested exception before the OHSAA. (10/8/25 Appeal Panel Tr., p. 10-11). Of greater concern, the trial court's conclusion that Parents' procedural due process rights were violated invalidates the OHSAA's decades-long practice of predicating their eligibility decisions on unsworn testimony. Given the substantial legal questions presented by this appeal, which no longer presents a live case or controversy, we decline to consider the merits.

Robb, J., concurs.

Hanni, J., concurs with concurring opinion.

Hanni, J., concurring.

{¶16} I concur with the majority opinion and write separately to briefly address the issue surrounding the scope of the hearing before the trial court.

{¶17} The issue in this case is whether the OHSAA appeals panel acted arbitrarily in refusing to apply Exception 12 to L.K. The OHSAA appeals panel determined that Exception 12 did not apply to L.K. The trial court found the opposite and determined the OHSAA appeals panel's ruling to be arbitrary.

{¶18} Exception 12 reads in its entirety:

> If, as a result of the conduct of an adult associated with the school, a student is compelled to transfer in order to protect the student's physical and/or mental well-being, the Executive Director's Office may waive all or part of the period of ineligibility for one or more sport/sport seasons provided ALL of the following criteria are met:
>
> a) there is documented evidence the adult conduct was directed specifically towards the student; and
>
> b) the adult conduct is of such a nature as to trigger a criminal investigation or an event covered under ORC 2151.421 that would require a mandatory reporter to report to the proper legal authorities; and
>
> c) the student suffered/suffers physical harm and/or severe emotional distress that required/requires medical treatment and/or mental health treatment, which was contemporaneously documented at the time of the event; and
>
> d) there is no evidence the transfer is due to the student/family's displeasure with a former coach's training tactics and/or the student's playing time.
>
> For purposes of this bylaw, "conduct" may include behavior of a physical nature as well as verbal and/or written expressions, gestures and

interactions. The conduct referred to herein may also include interactions via social media or other forms of electronic communications.

This exception will not be applied where there has been no documented evidence of a criminal investigation or a "reportable" event as outlined in criteria (b), nor will this exception be applied for a student who simply alleges displeasure with a former coach's training tactics.

Thus, an analysis of Exception 12 is very fact-intensive.

**{¶19}** The OHSAA argues on appeal, in part, that the trial court should have confined itself to the materials presented to the OHSAA appeals panel. But this was an injunction action with a full trial on the merits. This matter was not an administrative appeal from a state agency. The OHSAA is a voluntary, unincorporated, not-for-profit private organization.

**{¶20}** A party seeking a permanent injunction must establish that (1) the party has prevailed on the merits; (2) the party will suffer irreparable injury if the injunction is not granted; (3) no third parties will be unjustifiably harmed if the injunction is granted; and (4) the public interest will be served by the injunction. *Miller v. Miller*, 2005-Ohio-5120, ¶ 10-11 (11th Dist.), citing *Keefer v. Ohio Dept. of Job and Family Servs.*, 2003-Ohio-6557, ¶ 14 (10th Dist.). Before determining whether to grant a permanent injunction, the trial court conducts a full trial on the merits. *See, generally, Shawnee Ridge Hunting, LLC v. Larose*, 2026-Ohio-995 (4th Dist.). This trial on the merits is conducted by a neutral, impartial judge. The trial court is permitted to take sworn testimony, which it did in this case.

**{¶21}** This is in stark contrast to a hearing before the OHSAA appeals panel. The OHSAA appeals panel hearing is conducted by a three-person panel chosen by the OHSAA. The hearing is limited to 30 minutes. Importantly, no sworn testimony is taken and there is no cross-examination of witnesses.

**{¶22}** Significantly, after a full hearing in this case, the trial court found:

Generally speaking to the procedure itself available to applicants who are appealing the denial of a Bylaw Exception by the Executive Director, Mr.

Sayers did not address any of the factual allegations made by Plaintiffs in these proceedings. Rather, he concentrated on the fact that certain elements of this behavior were not "documented" properly to withstand scrutiny by the Appeals Panel. It must be emphasized that the Defendant, OSHAA [sic] offered no testimony whatsoever at any time in these proceedings to refute or in any way rebut the testimony of Ms. Kollar and her son with respect to the [treatment of] him over the years.

. . .

In cases involving injunctive relief, the court sits as a court of equity and, in ruling, "will balance the equities between the parties and consider the benefit to the plaintiff of a mandatory writ as against the inconvenience and damage to the defendant, and award relief accordingly." *Brady v. Haines*, 2021-Ohio-4565. The Court exercises broad discretion to balance the competing interests of the parties and fashion a just and appropriate remedy.

(Nov. 4, 2025 J.E.).

And then before rendering its decision, the court noted that it considered "the testimonial evidence, all exhibits submitted, the aforementioned motions and memoranda filed with the Court and the arguments of counsel[.]"

{¶23} Thus, I would find that the trial court fulfilled its role as the trier of the facts in a permanent injunction trial by considering all of the evidence presented and concluding that the OHSAA appeals panel arbitrarily determined L.K. was not entitled to the benefit of Exception 12.

Case No. 25 MA 0116

_____

For the reasons stated in the Opinion rendered herein, we find no live controversy remains following graduation and the conclusion of the 2025-2026 OHSAA baseball season and the issue is not capable of repetition but evading review. Therefore, this appeal is dismissed as moot. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**